UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| UNITED EMPLOYMENT ASSOCIATES, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:23-cv-03668 |
| | : | |
| LANDMARK CONSTRUCTION | : | |
| COMPANY, INC., and PORT CITY | : | |
| CONCRETE, INC., | : | |
| Defendants. | : | |

_____

**O P I N I O N**
Motion to Dismiss, ECF No. 13 – Dismissed without Prejudice

**Joseph F. Leeson, Jr.**                                                                                                                                   **June 21, 2024**
**United States District Judge**

### I.  INTRODUCTION

This case deals with a contractual dispute over the placement of an employee by Plaintiff into employment with one of the defendants.  Plaintiff has brought claims of breach of contract, unjust enrichment, and quantum meruit against both Defendants for the alleged failure to pay Plaintiff a placement fee. Defendants Landmark Construction Company and Port City Concrete have filed a motion to dismiss for lack of personal jurisdiction and for failing to state a claim. However, Defendants' motion primarily turns on whether Landmark and Port City should be treated as separate companies or as one entity for jurisdictional purposes and for resolution of the underlying claims. For the reasons discussed below, this Court will order limited jurisdictional discovery and dismiss Defendants' motion without prejudice.

### II.  BACKGROUND

The following facts are alleged in the Complaint.

### A. Business dealings between Plaintiff and Defendants

Plaintiff, United Employment Associates, is a Pennsylvania limited liability corporation with its primary place of business in Emmaus, Pennsylvania. Am. Compl. ¶ 1, ECF No. 8. Plaintiff provides employment and contractor placement services to other businesses. *Id.* ¶ 6. Defendants are both corporations with primary places of business in North Charleston, South Carolina. *Id.* ¶¶ 2, 3.

Plaintiff and Defendants began a business relationship in or around October of 2019. *Id.* At that time, Richard Mixson, as an agent of Port City, entered into a placement contract with Plaintiff. *Id.* ¶ 7; Ex. A ("Contract"). The contract provided that if Plaintiff placed an applicant with Port City in the capacity of full-time employment, then Plaintiff would be entitled to a placement fee of 30 percent of the applicant's projected first-year earnings. Contract at 1; Am. Compl. ¶¶ 6-7. The contract also contained a consent clause subjecting Port City to the jurisdiction of Pennsylvania for the enforcement of the agreement. *Id.* Between October 2019 and October 2021, Plaintiff provided its services to both Defendants, with the bulk of the services being performed for Port City. Am. Comp. ¶¶ 12-17. During this time period, Defendants contacted Plaintiff fifteen times: twelve from Port City and three from Landmark. *Id.* From these requests, Port City made five permanent hires. *Id.* ¶ 15.

The present dispute arises from events beginning in October 2021. *Id.* at ¶ 19. At that time, Mixson requested Plaintiff's services to search for a Chief Operating Officer for Landmark. *Id.* Plaintiff put Mixson in contact with candidate Anthony Michael Garcia. *Id.* ¶ 21. Mixson and Garcia had several meetings, but ultimately Garcia informed Plaintiff that he would not be moving forward with Landmark, instead remaining with his current employer. *Id.* ¶¶ 22-23; Ex. E. ("Messages"). However, before giving this notice to Plaintiff, Garcia was employed by

Landmark after being placed there by a different, third-party placement entity. Am. Compl. ¶¶ 25-34.

Plaintiff alleges the placement contract between Plaintiff and Port City was breached because Landmark learned of Garcia through Plaintiff's services.  By Landmark electing to hire Garcia, Plaintiff asserts that it is entitled to the placement fee. *Id.* Plaintiff requested payment from Mixson but he refused, instead offering thirty percent of the contracted fee as compensation and explaining that the full fee would go to the other third-party placement entity.[1] *Id.* ¶ 30, 31. The crux of the alleged breach, then, is that Defendants—after arranging with Plaintiff to recruit and place Garcia with Landmark— also contracted with a different placement agency for the same service placing the same candidate at a cheaper rate. Am. Comp. ¶¶ 19-34; Ex. D ¶¶ 2-4 ("Affidavit"). Because Landmark first learned of Garcia through Plaintiff and subsequently chose to hire Garcia, Plaintiff asserts that the terms of the contract with Port City are enforceable against both Defendants, due to the companies' affiliation with each other. Am. Comp. ¶ 38.

### B. Relationship between Landmark and Port City

As previously mentioned, Landmark and Port City are both at home in South Carolina: each with its primary place of business within the state and each is incorporated there as well. Am. Compl. ¶¶ 2-3. The two entities apparently operate under the authority of Mixson, who is either a principal, actor, or representative for each entity. *Id.* at ¶¶ 3, 11; Contract at 1; Ex. B ("Emails") at 1, ECF No. 8. Specifically, Mixson is the registered agent of Port City and he has signed contracts on its behalf. Am. Compl. ¶ 3; Contract at 1. Additionally, Mixson has also sent

---

[1] Landmark's contract with this other placement entity took effect on January 5, 2021, one day before Garcia notified Mixson he was uninterested in a position with Landmark, and two days prior to Garcia informing Plaintiff he would remain with his current employer. *Id.* ¶¶ 24, 34; Messages at 1.

emails on behalf of Landmark through an email domain name belonging to Landmark, where his email signature lists him as "President." Emails at 4.

Defendants also appear to share a human resources department. Am. Compl. ¶ 11. The Manager of Human Resources, Jennifer Freeman, has acted for Landmark and Port City through email under a Landmark domain name. Emails at 2-3. Specifically, Freeman has sent emails to Plaintiff stating, "I believe you are working with our President Rick Mixson on a General Manager role for our Ready Mix Concrete Company," while using a Landmark domain name, and while listing Landmark's website in the signature block of her emails. *Id.* (where "our Ready Mix Concrete Company" apparently refers to Port City). Landmark and Port City also appear to share a benefits program—the Employee Benefits Guides for 2021 through 2023 have the logos for both entities printed on the cover of the guides. Am. Compl. ¶ 11; Ex. C ("Benefits Guide") at 8-9.

The registered agents of both Landmark and Port City, while different individuals, share a "registered agent" address of 3255 Industry Drive, North Charleston, South Carolina, the same address that Landmark uses for its primary place of business. Am. Compl. ¶ 2-3.

Finally, Plaintiff has performed its services for both Defendants prior to the instant dispute. *Id.* at ¶¶ 12-17. There exists only one written contract between Port City and Plaintiff, yet, Plaintiff has previously received requests for positions to be filled at Landmark consistent with the services described in the placement contract. *Id.* In the present dispute, Mixson, on Landmark's behalf, requested the "exact thing" that Plaintiff had provided to Port City in the past. *Id.* at ¶ 20; Affidavit at ¶ 1 (where the "exact thing" refers to Plaintiff's placement services). Mixson also offered Plaintiff one-third of the fee detailed in the placement contract to Plaintiff for the work it performed placing Garcia with Landmark. Am. Compl. at ¶ 30. Plaintiff

asserts each of these gestures represents an implicit acknowledgment from Landmark that it is related to Port City and bound to the written contract between Port City and Plaintiff. *Id.* at ¶ 42.

## III. LEGAL STANDARDS

### A. Motion to Dismiss under Rule 12(b)(2) – Review of Applicable Law

When reviewing a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), this Court must accept the plaintiff's allegations as true and resolve disputed facts in favor of the plaintiff. *Pinker v. Rocher Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). However, once a defendant has raised a jurisdictional defense, the plaintiff must "prove by affidavits or other competent evidence that jurisdiction is proper." *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). If an evidentiary hearing is not held, a plaintiff "need only establish a prima facie case of personal jurisdiction." *Id*. A plaintiff meets this burden by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434 (3d. Cir 1987).

### B. Motion to Dismiss under Rule 12(b)(6) – Review of Applicable Law

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").  "[I]n light of *Twombly*, Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 555 n.3). *See also* Fed. R. Civ. P. 8(a) (requiring the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief").  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Also, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted).  The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

      C.    **Jurisdictional Discovery – Review of Applicable Law**

Plaintiffs "are faced with the difficult task of trying to establish personal jurisdiction over a corporation." *Metcalfe,* 566 F.3d 324 at 336 (ordering jurisdictional discovery and describing its benefits).  Ordinarily, a plaintiff is entitled to jurisdictional discovery when its claim to personal jurisdiction is "not clearly frivolous." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760,

781 (3d Cir. 2018) (citing *Metcalfe,* 566 F.3d at 336) (holding that the Third Circuit permits using the alter-ego theory to establish personal jurisdiction). However, the discovery process should be narrow in scope: it is not "a license for the parties to engage in a 'fishing expedition,'" and it must be circumscribed "to only the factual questions necessary to determine [the Court's] jurisdiction." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 353-54 (3d Cir. 2016) (quoting *Lincoln Benefit Life Ins. Co. v. AEI Life, LLC*, 800 F.3d 99, 108 n.38 (3d Cir. 2015)).

Additionally, when a court permits jurisdictional discovery, Rule 26(b)(1) of the Federal Rules of Civil Procedure lists the following factors for defining the scope of discovery: "the importance of the issue at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 259 (discussing the 2015 amendments to rule 26(b)(1) and explaining that the amendments require proportionality between the size of discovery and the factual dispute in question).

    **D.**    **Alter-Ego Theory for Personal Jurisdiction over Business Entities – Review of Applicable Law**

The Third Circuit applies an alter-ego theory to exercise jurisdiction when "a subsidiary is merely the agent of a parent corporation, or if the parent corporation otherwise controls the subsidiary," and, if so, "then personal jurisdiction exists over the parent whenever personal jurisdiction (whether general or specific) exists over the subsidiary." *Fuhrman*, 2023 U.S. Dist. LEXIS 155820 at *20 (internal quotation marks omitted) (quoting *Shuker*, 885 F.3d at 781). This may include showing that the parent controls day-to-day operations, where the subsidiary

effectively acts as a mere department of the principal. *Id.*

This district typically weighs the following ten factors when considering an alter-ego theory for personal jurisdiction purposes:

> (1) ownership of all or most of the stock of the related corporation; (2) common officers and directors; (3) common marketing image; (4) common use of a trademark or logo; (5) common use of employees; (6) integrated sales system; (7) interchange of managerial and supervisory personnel; (8) performance by the related corporation of business functions which the principal corporation would normally conduct through its own agent or departments; (9) acting of the related corporation as marketing arm of the principal corporation, or as an exclusive distributor; and (10) receipt by the officers of the related corporation of instruction from the principal corporation.

*Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 471 (E.D. Pa. 2019) (citing *Neopart Transit, LLC v. CBM N.A. Inc.*, 314 F. Supp. 3d 628, 645 (E.D. Pa. 2018); *see generally Simeone ex rel. Est. of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH*, 360 F. Supp. 2d 665, 675-79 (E.D. Pa. 2005) (explaining that under an alter-ego theory, jurisdiction still must comport with notions of fair play and substantial justice for purposes of due process); *In re Latex Gloves Prod. Liab. Litig.*, No. 1148, 2001 U.S. Dist. LEXIS 12757, at *6-13 (E.D. Pa. Aug. 22, 2001) (same).

After weighing these factors and determining that two entities are likely alter-egos, some courts have held that the pleaded facts are sufficient to exercise personal jurisdiction for the life of the action. *See e.g., Bombardier-Rotax*, 360 F. Supp. 2d at 679 (holding that pleading an alter-ego theory firmly established personal jurisdiction consistent with notions of fair play and substantial justice); *In re Latex Gloves*, 2001 U.S. Dist. LEXIS 12757 at *25 (holding the evidence showing defendants were alter-egos was "overwhelming" and comported with notions of fair play and substantial justice). In contrast, others have ordered jurisdictional discovery to fully develop alter-ego facts before allowing the action to proceed. *See e.g., Neopart Transit,* 314 F. Supp. 3d at 646 (holding that the pleadings supported an alter-ego theory that was not

effectively acts as a mere department of the principal. *Id.*

This district typically weighs the following ten factors when considering an alter-ego theory for personal jurisdiction purposes:

> (1) ownership of all or most of the stock of the related corporation; (2) common officers and directors; (3) common marketing image; (4) common use of a trademark or logo; (5) common use of employees; (6) integrated sales system; (7) interchange of managerial and supervisory personnel; (8) performance by the related corporation of business functions which the principal corporation would normally conduct through its own agent or departments; (9) acting of the related corporation as marketing arm of the principal corporation, or as an exclusive distributor; and (10) receipt by the officers of the related corporation of instruction from the principal corporation.

*Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 471 (E.D. Pa. 2019) (citing *Neopart Transit, LLC v. CBM N.A. Inc.*, 314 F. Supp. 3d 628, 645 (E.D. Pa. 2018); *see generally Simeone ex rel. Est. of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH*, 360 F. Supp. 2d 665, 675-79 (E.D. Pa. 2005) (explaining that under an alter-ego theory, jurisdiction still must comport with notions of fair play and substantial justice for purposes of due process); *In re Latex Gloves Prod. Liab. Litig.*, No. 1148, 2001 U.S. Dist. LEXIS 12757, at *6-13 (E.D. Pa. Aug. 22, 2001) (same).

After weighing these factors and determining that two entities are likely alter-egos, some courts have held that the pleaded facts are sufficient to exercise personal jurisdiction for the life of the action. *See e.g., Bombardier-Rotax*, 360 F. Supp. 2d at 679 (holding that pleading an alter-ego theory firmly established personal jurisdiction consistent with notions of fair play and substantial justice); *In re Latex Gloves*, 2001 U.S. Dist. LEXIS 12757 at *25 (holding the evidence showing defendants were alter-egos was "overwhelming" and comported with notions of fair play and substantial justice). In contrast, others have ordered jurisdictional discovery to fully develop alter-ego facts before allowing the action to proceed. *See e.g., Neopart Transit,* 314 F. Supp. 3d at 646 (holding that the pleadings supported an alter-ego theory that was not

frivolous and that the plaintiff should have a chance to develop its facts through jurisdictional discovery). *See also Marshall v. Prestamos CDFI, LLC,* No. 21-04337, 2023 U.S. Dist. LEXIS 54690 at *26 (E.D. Pa. Mar. 20, 2023) (holding that pleading non-frivolous facts under an alter-ego theory was sufficient to permit jurisdictional discovery without reaching the ten-factor analysis).

IV.   **DISCUSSION**

Defendants have jointly filed a motion to dismiss for lack of personal jurisdiction and for failure to state a claim. However, the Court cannot yet reach the merits of the 12(b)(6) motion, because, first, the Court must decide whether personal jurisdiction may properly be exercised over both Defendants.  Landmark asserts that the Court cannot exercise general or specific personal jurisdiction over itself because Landmark has not purposefully availed itself of Pennsylvania's jurisdiction or otherwise consented to jurisdiction in Pennsylvania, and generally has too few contacts with Pennsylvania to establish a strong relationship with the forum.  Def. Mot. to Dismiss at 13-15, ECF. No. 13.  *See e.g., Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1028 (2021)) (explaining that for a court to properly exercise personal jurisdiction there must exist a "strong relationship' between 'the defendant, the forum, and the litigation"); *see generally Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (stating the elements required for specific personal jurisdiction).  Port City argues that, even though it consented to the jurisdiction of Pennsylvania through the Contract at issue, this consent should only apply when Port City is the actor violating the terms of the Contract, and here, the alleged breach was conducted by Landmark, a separate entity.  Def. Mot. to Dismiss at 16.

Even assuming that this Court may exercise personal jurisdiction over Port City based on its contractual consent, this Court is particularly concerned that it may not be able to exercise personal jurisdiction over Landmark. Therefore, to determine whether jurisdiction is proper over *both* Defendants, and before the Court can address the merits of the intertwined claims, it is first necessary to uncover whether Landmark and Port City should be treated as one entity or as separate companies. Plaintiff asserts that Defendants are "alter-egos" of one another or are otherwise sufficiently interrelated to be treated as a single entity. Am. Compl. ¶ 4; Resp. at 9-10, ECF No. 16. As further discussed below, the Court finds enough facts in the pleadings to establish a *prima facie* showing that Defendants may be treated as alter-egos, or at least to show that Plaintiff's alter-ego argument is not frivolous such that jurisdictional discovery is warranted. Therefore, the Court finds that ordering jurisdictional discovery is necessary to ensure that this Court may properly exercise jurisdiction over both Defendants for the life of the action. Defendants' motion may therefore be renewed at the end of the limited jurisdictional discovery period.

Here, Plaintiff has met its *prima facie* burden to show that Defendants are alter-egos under this district's ten-factor test as articulated above. Plaintiff has plead the following supportive facts: (1) Mixson has acted as a principle or representative for both Defendants because he is President of Landmark and the registered agent of Port City; (2) Landmark and Port City share an address, a human resources department as well as a benefits program, and business activities conducted for Port City were organized under email addresses using Landmark's domain name; (3) Freeman referred to Port City as "our company" while conducting business for Landmark using an email with Landmark's domain name, and; on Landmark's behalf, Mixson offered Plaintiff one-third of the placement fee detailed in the contract between

10
062124

Plaintiff and Port City, implying that Mixson believes Landmark and Port City are interrelated. Accepting these facts as true shows a *prima facie* affiliation between Landmark and Port City, where Port City appears to be a subsidiary under the control of Landmark, which is enough to satisfy the "possible existence" of requisite contacts between Landmark and this forum through an alter-ego theory.

Further assessing these facts under this district's ten-factor alter-ego analysis weighs in favor of the alter-ego theory as well, as several factors support that Port City is likely a subsidiary of Landmark. Under factors two, five, and seven, Plaintiff has pointed to specific facts showing that Mixson, as President of Landmark, and Freeman, as Human Resources Manager, are common officers or employees, and are interchangeable personnel. Both Mixson and Freeman have conducted business for Port City using domain names and email signatures that belong to Landmark. Freeman refers to Port City as "our company," suggesting that Port City is viewed as belonging to Landmark. Freeman is also a common employee: even though her position is managerial, she is still an employee of Landmark—yet she performs functions relevant to Port City's hiring decisions. Additionally, Mixson clearly interchanges between supervisory roles at Landmark and Port City: he holds presidential status at Landmark while also being the registered agent of Port City, and he has signed contracts on Port City's behalf. These factors indicate Port City is likely a subsidiary of Landmark.

Factor three also supports Plaintiff's argument. Per the Defendants' benefits guide, it is evident that Landmark and Port City have distinct logos, but these logos appear on a single employee benefits guide. *See* Benefits Guide at 1-2. The appearance of each logo on a single guide reasonably suggests that the two operate in unison and, when considered in the larger context, ultimately suggests that Port City is a subsidiary of Landmark.

Factor eight also favors finding Port City is a subsidiary of Landmark. There are four documented incidents where Plaintiff was instructed to search for employees for Landmark consistent with the terms of the placement contract Port City has with Plaintiff. This effectively places Port City in the shoes of a "related corporation" carrying out the business of the principal corporation, Landmark, because services performed for Landmark run through an agreement Port City has with the service provider—Plaintiff. This is also supported by Mixson's offer to pay Plaintiff one-third of the placement fee for placing Landmark into contact with Garcia. Landmark may be viewed as effectively delegating its hiring decisions to Port City. The remaining factors are neutral to the analysis or inapplicable to the facts at hand, and therefore neither weigh for or against an alter-ego finding.

These factors taken together not only satisfy Plaintiff's *prima facie* burden to show that Landmark and Port City are alter-egos but certainly show that Plaintiff's alter-ego argument is not frivolous. Therefore, jurisdiction over Port City, whom has consented through the Contract at issue, may likely extend to Landmark as well. Nevertheless, this Court will not yet make a final ruling on whether personal jurisdiction exists over both entities, because jurisdictional discovery is needed to ensure that this Court can properly maintain personal jurisdiction over both Defendants for the entirety of the action. Conducting jurisdictional discovery at this early stage of the litigation will not only preserve judicial resources, but also prevent offending Defendants' due process rights if personal jurisdiction cannot be established over Landmark by a preponderance of the evidence later in this action. *See e.g., In re Latex Gloves*, 2001 U.S. Dist. LEXIS 12757 at *25 (explaining the importance of due process rights for personal jurisdiction); *see generally Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (explaining that personal jurisdiction is a due process issue). Moreover, further investigation of the alter-ego theory gives

Plaintiff, who has made its necessary preliminary showings, the opportunity to continue to litigate in its chosen forum. *See Bombardier-Rotax*, 360 F. Supp. 2d at 679 (quoting *Walsh v. Alarm Sec. Group, Inc.*, 157 F. Supp. 2d 501, 507 (E.D. Pa. 2001)) ("[w]hen a Pennsylvania resident is injured in the Commonwealth, Pennsylvania has a strong interest in providing a forum for the resident and in having the responsible defendants accountable for their actions in Pennsylvania.") (alteration in original)).

V.  **CONCLUSION**

For the reasons discussed, Defendants' motion to dismiss for lack of personal jurisdiction and failure to state a claim is dismissed without prejudice pending limited jurisdictional discovery. A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge